UNITED STATES *v.* BRITISH & IRISH WOOLENS CORP. (No. 3821)[1]

---

[1] T. D. 47635.

United States Court of Customs and Patent Appeals, March 25, 1935

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Hugo P. Geisler,* special attorney, of counsel), for the United States.

*Puckhafer & Rode* (*George J. Puckhafer* and *Henry J. Rode* of counsel) for appellee.

[Oral argument February 5, 1935, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT; Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the First Division of the United States Customs Court sustaining the protests of appellee against the classification and duty assessment by the collector of customs at the port of New York of certain importations of cloth known as "Montagnac."

It was classified by the collector as a woven woolen fabric, and is claimed by the importer to be a pile fabric.

Certain of the importations were made under the Tariff Act of 1922; others under the Tariff Act of 1930. The pertinent portion of paragraph 1109 of the former act, under which the earlier importations were classified by the collector, reads:

PAR. 1109. Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, * * * valued at more than 80 cents * * *, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem; * * *

The pertinent language of paragraph 1109 of the Tariff Act of 1930, under which the later importations were classified by the collector, reads:

PAR. 1109. (a) Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, * * *; valued at more than $2 per pound, 50 cents per pound and 60 per centum ad valorem.

The importer claims that classification should be under paragraphs 1110 of the respective acts. Paragraph 1110 of the 1922 act reads:

PAR. 1110. Pile fabrics, cut or uncut, whether or not the pile covers the whole surface, made wholly or in chief value of wool, and manufactures, in any form, made or cut from such pile fabrics, 40 cents per pound and 50 per centum ad valorem.

Paragraph 1110 of the 1930 act reads:

PAR. 1110. Pile fabrics, whether or not the pile covers the entire surface, wholly or in chief value of wool, and all articles, finished or unfinished, made or cut from such pile fabrics: If the pile is wholly cut or wholly uncut, 44 cents

per pound and 50 per centum ad valorem; if the pile is partly cut, 44 cents per pound and 55 per centum ad valorem.

Since all the merchandise involved is conceded to consist of woven fabrics, weighing more than four ounces per square yard, composed wholly or in chief value of wool, and of the values returned by the appraiser, the sole question for determination is whether the fabrics also are pile fabrics within the meaning and intent of the respective paragraphs 1110, *supra*, of the respective tariff acts under which imported.

It seems to be the theory of the Government that they are not true pile fabrics, but merely woven wool fabrics so "napped," or "teaseled," or "gigged," as to simulate pile fabrics.

No question of commercial designation, apart from common meaning, is presented.

During the course of the trial eight witnesses testified, two of whom were called by the importer and six by the Government.

The first of importer's witnesses was the president of the importing company. He testified that the merchandise is manufactured or shipped only by Montagnac & Fils, of Sedan, France, and identified one sample, filed as Exhibit 1, as having been cut from a cloth of the importation, and another, filed as illustrative Exhibit A, as representing the cloth in the condition as it came from the loom.

All the other witnesses testified principally as experts. As so often happens sharp differences of opinion were expressed as to whether the merchandise is a true pile fabric. The witnesses do not agree as to just what constitutes a true pile fabric, and this doubtless accounts, in a large measure, for the differences of opinion as expressed relative to the character of the merchandise. Some confusion also grows out of the fact that different witnesses use different terms in defining the weft threads of the fabric.

However, there is substantial agreement as to one fundamental characteristic which must appear in a fabric to render it a true pile, viz, that there must be introduced, at the time of weaving, surplus threads (that is a series of threads in addition to the basic threads composing warp and weft) to be cut to make the pile.

Importer's witness, Mr. James Chittick, in answer to a question requesting his opinion as to what consitutes a pile fabric, said:

It is a fabric from which in addition to its structural foundation there rises up curls, tufts, loops, direct fibers as grass will rise from a sod, and which materials may be treated in various ways. They may be roughed and curled, and nubbed, and steamed, and pressed, and brushed; but in the pile fabric these irregular threads in whatever form they are, are derived from a separate supply of warp threads or filling threads in addition to the supply required to make the foundation basic material. That is, additional threads worked into the cloth from which this pile is to be secured.

This definition was repeated by him in varying language, but always to the same purport, upon cross examination.

Also Mr. Chittick gave descriptions of different methods of producing different kinds of pile fabrics.

It will be noted that he states in his definition, as quoted *supra*, that the extra threads for making the pile "in whatever form they are, are derived from a separate supply of warp threads or filling threads in addition to the supply required to make the foundation basic material." "Filling threads", as used by this witness and other witnesses, are by some referred to as "weft threads", and we understand the terms to be synonymous.

The preponderance of the testimony given by the witnesses called by the Government is to the same effect as that of Mr. Chittick, viz, that the extra threads for making the pile may be introduced with either the warp or weft threads, only one (Mr. Martin Collins) being positive in the statement that pile is made "By warp threads exclusively."

Mr. Chittick's testimony relating to the structure of the merchandise at issue was as follows:

Q. Now, what did you find the construction of this fabric to be—exhibit 1?—A. I found it to be a triple cloth made of wool. There are 2 warps to it, each one having about 22 ends to the inch, a very slight warp and there are 3 sets of filling threads; 32 on the back, which interlace with the back warp; 32 in the center which interlace with both back and top warp; and 32 double threads on the face, which interlace with the top warp, and from which double threads the pile is secured.

Q. In other words this fabric has two sets of warp threads and three sets of filling threads?—A. Right.

Q. The filling thread in the back interlacing with the lower warp thread?—A. Right.

Q. And the center filling threads interlacing with the lower and upper warp threads?—A. Right.

Q. And the face or filling threads, the face of the fabric, is a double thread interlacing with the upper warp thread?—A. Right.

The only witness for the Government who seems to have made a detailed analysis of the merchandise was Mr. Henry A. Gassman, who has been a Government analyst of all sorts of fabrics and weaves for a long period of years.

When Mr. Gassman's testimony is examined with care there does not seem to be any substantial disagreement between him and Mr. Chittick as to the actual structure of the merchandise at issue. The testimony of Mr. Gassman with respect to the "double thread interlacing with the upper warp thread", referred to by Mr. Chittick, is that the "top threads are composed every time of two threads, individual threads doubled on the top before being introduced into the cloth, thereby giving a very slight twist."

We understand it to be the very positive view of Mr. Gassman that a true pile is made only by cutting the threads through with a knife, and he states, in effect, that in the process which, in his opinion, must have been applied to the merchandise at issue after it had been woven—such as teaseling, or gigging—the double thread, or both slightly twisted top threads, were not cut through, but first one and then the other of the strands "gets a little more teaseling or is touched or scrapped more by the napper of the machine, and perhaps torn a little more."

Referring to the merchandise at issue, he adds:

If that was a pile fabric, both threads would be cut, and would only be cut at a certain spot, giving a pile, while in a nap fabric the entire surface is scrapped by the napper.

One or more of the other witnesses called by the Government adhered to the theory that a true cut pile results only from the cutting of the extra threads with a knife. One thinks a true pile fabric is made only on a pile-fabric loom, or at least that the loom upon which it is woven must be especially arranged for its weaving. One seems to have the view that a true cut pile must be woven double and split by knife action.

After the Government had concluded taking its testimony during the course of which numerous illustrative exhibits were introduced, the importer again called Mr. Chittick in rebuttal.

His rebuttal testimony was to the effect that he had made further analysis of Exhibit 1 and Illustrative Exhibit A, and he presented an exhibit showing how he had taken the cloth as it came from the loom (Illustrative Exhibit A) and inserted a series of toothpicks beneath the twisted threads to illustrate how when one or the other of the strands was cut or broken by whatever process was used to produce Exhibit 1, the fabric remained intact having "all the warp and filling threads that appeared in it before the broken thread was broken."

As to Exhibit 1, he also said:

* * * I have drawn out a series of the filling threads, one showing the filling foundation thread uncut; another showing the intermediate filling thread. It is uncut, although I broke it here. The other showing the double face thread which produces the pile, which shows it is cut.

*　　*　　*　　*　　*　　*　　*

Then follows another foundation pick, another center pick, and then again the broken filling material. * * *

Also he testified that the imported merchandise had, upon one of its sides, "been exposed to an ordinary napping operation" which caused that side, or the back, to be napped, while the other side, by reason of the process applied to it, constituted a "pile face."

The following pertinent observations appear in the opinion of the trial court:

It appears also that there is a method of producing a pile by means of weaving two complete cloths at the same time, the extra threads being alternately interwoven into the two cloths. These extra threads are cut, thus producing two separate "pile fabrics." This method of producing a pile seemed to be the only one with which some of the witnesses were familiar and which led some of them to the erroneous assertion that any other method would not produce a true pile fabric.

The terms "nap" and "pile" as applied to the result seem to be practically identical and such differences between the "hairiness" of "napped fabrics" and the "hairiness" of "pile fabrics", which the terms "nap" and "pile" seem intended to connote, are not fundamental differences in the product but in the method of production. Both terms designate a "hairiness" on the surface of woven fabrics which in some cases, as has been demonstrated at the instant trial, are so much alike that even an expert of 35 years' experience admitted that he could not be sure whether the cloth here in question was a "napped" or a "pile" fabric without an analysis.

The distinction between "pile" fabrics and "napped" fabrics as outlined above is not obvious in the pile provisions in either the Tariff Act of 1922 or the act of 1930. In both acts "pile fabrics" are provided for eo nomine in the cotton schedule (par. 910), in the hemp schedule (par. 1012), in the silk schedule (par. 1206), of the act of 1922; and in the same schedules in the act of 1930 as well as in the rayon schedule, paragraphs 909, 1012, 1206, and 1307, respectively. In all these paragraphs as well as in the woolen paragraphs here under consideration the eo nomine designation distinguishes "pile" fabrics from the general mass of textiles, but the language employed gives no ground for the inference that Congress meant to distinguish "pile" fabrics from "napped" fabrics and segregate them into two separate and never overlapping classes.

In other paragraphs of both acts where the terms "pile" and "napped" are both used, it is evident that Congress intended some distinction, but just what distinction was intended is nowhere certainly apparent. (See pars. 909 and 911 of the act of 1922 and pars. 908 and 911 of the act of 1930.)

Careful examination of the record leads us to the conclusion that no sound reason has been shown for disturbing the judgment of the trial court. It appears from the record that all three judges of the division sat during the taking of the testimony. They heard the witnesses and had the opportunity of observing them while testifying.

The differences of opinion expressed, after all, grew out of the respective theories as to what constitutes a true pile fabric, and there is no reason to question the credibility of any witness, but that there were differences in the actual qualifications of the witnesses, as experts in this field, is apparent. All judges of the trial court, after weighing the testimony, concurred in the conclusion reached.

We find no authority which would seem to justify a holding that, as a matter of law, to create a true pile, a knife must be used for cutting the threads. If a pile is actually created it would not seem to be of any legal consequence what instrument is used in performing the cutting operation.

One definition of pile given by Funk & Wagnalls New Standard Dictionary is:

4.—A hair-like surface on a fabric, especially when irregular.

The Oxford dictionary defines "pile" as:

A nap upon cloth; now especially the downy nap or shag of velvet, plush, and similar fabrics, produced by an accessory or secondary warp the loops of which are cut so as to form a nap; also, loops in a carpet similarly produced and forming a nap. * * * In Brussels carpet the wires are simply withdrawn and the loops left standing.

We find no definition which limits the cutting process to any particular instrumentality; none which provides that the weaving shall be of a double cloth, nor any which requires a particular form of loom.

Our examination has not been extended to an investigation of the accuracy of the illustrative photograph or sketch, included in the opinion of the trial court, which we understand was taken from some publication, because, although such accuracy has been questioned by the Government, it has not been found necessary for us to pass upon it in view of the record.

The judgment of the United States Customs Court is *affirmed*.